[Cite as *State v. Beasley*, 2016-Ohio-4700.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 103587

---

# STATE OF OHIO

### PLAINTIFF-APPELLEE

vs.

# ANTHONY L. BEASLEY

### DEFENDANT-APPELLANT

---

## JUDGMENT:
## REVERSED AND REMANDED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-15-593600-A

**BEFORE:** Boyle, P.J., Blackmon, J., and Laster Mays, J.

**RELEASED AND JOURNALIZED:** June 30, 2016

**ATTORNEYS FOR APPELLANT**

Robert L. Tobik
Cuyahoga County Public Defender
BY:   Cullen Sweeney
Assistant Public Defender
310 Lakeside Avenue, Suite 200
Cleveland, Ohio   44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
BY:   Daniel T. Van
Assistant County Prosecutor
Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio   44113

MARY J. BOYLE, P.J.:

{¶1} Defendant-appellant, Anthony Beasley, appeals his convictions. He raises two assignments of error for our review:

I. Anthony Beasley's registration-related convictions are not supported by legally sufficient evidence as required by state and federal due process.

II. Anthony Beasley's registration-related convictions are against the manifest weight of the evidence.

{¶2} After thorough review, we find merit to Beasley's first assignment of error, reverse the judgment of the trial court, and vacate Beasley's convictions.

## I. Procedural History and Factual Background

{¶3} In February 2015, Beasley was indicted on two counts: Count 1, failure to provide notice of change of address in violation of R.C. 2950.05(E)(1), a third-degree felony, with a furthermore clause that he had previously been convicted of failure to provide notice of his change of address; and Count 2, tampering with records in violation of R.C. 2913.42(A)(1), also a third-degree felony. Beasley waived his right to a jury trial, and the case proceeded to the bench, where the following facts were presented.

{¶4} As a sex offender, Beasley is required to register any change of address 20 days prior to moving as a result of a 1997 rape conviction. He is also required to register his address annually, on December 9, with the Cuyahoga County Sheriff's Department. Beasley registered his address on December 9, 2013, stating that he lived at the Walnut Inn apartments, Unit 17, on Walnut Avenue, Cleveland, Ohio. Beasley also registered the same address on December 9, 2014. Beasley then provided notice of a change of

address on February 5, 2015, stating that he moved to an address on Alder Avenue, Cleveland, Ohio.

{¶5} Detective Nick Riegelmayer and Sergeant Eugene Sharpe of the Cuyahoga County Sheriff's Department were assigned to verify registered sex offenders for Cuyahoga County on October 25, 2014. They went to the Walnut Inn apartments that day to verify Beasley's address. They knocked on the door of the building. Detective Riegelmayer said that they were let in by a man who "claimed to be the apartment manager," and identified himself as Gregory Lucic. The sheriff's deputies showed Lucic a photo of Beasley. Lucic told Detective Riegelmayer and Sergeant Sharpe that Beasley no longer lived there, that he and his girlfriend had "moved out six months prior." The deputies obtained a written statement from Lucic to that effect. The deputies did not knock on the door of Unit 17 or see a written record that Beasley had moved out on a specific date.

{¶6} Detective Kathleen Oleksiak testified that she is a detective in the compliance division of the sex offender unit for the Cuyahoga County Sheriff's Department. She received Beasley's case once his address verification came back negative. She followed up with Lucic based on the statement that he had given Detective Riegelmayer and Sergeant Sharpe. After talking to Lucic, she learned that Beasley was not living at the address he had provided, that he had moved out six months prior.

{¶7} Lucic testified that he has lived at the Walnut Inn apartments on Walnut

Avenue in Cleveland, Ohio, for approximately 12 years. He lives there rent free in exchange for helping the owner of the building by handling some maintenance issues (although not as much as he used to because he had not been feeling very well for the last two years), answering phones, handing out rental applications, and occasionally showing rooms to prospective tenants. Lucic said that tenants sometimes call him the "manager," but he is "not on the payroll or anything." Lucic further stated that he did not have access to the owner's office, or "files, or anything in the office."

{¶8} Lucic testified that he was familiar with the tenants at the Walnut Inn, including Beasley. Lucic explained that Beasley's girlfriend, Kenya Watts, rented Unit 17, not Beasley. Although the rooms were "single room occupancy," Lucic would see Beasley "in passing" at the Walnut Inn "pretty much daily." But Lucic could not say how long Watts lived at the Walnut Inn. He was "pretty sure" that Watts lived there for "over a year," but he could not say when exactly, nor could he specifically say when Watts moved out of the apartment or when he last saw Beasley at the apartment.

{¶9} The state asked Lucic if he recalled speaking to sheriff deputies on October 25, 2014. Lucic replied, "[v]aguely, but they come there a lot." When specifically asked if he recalled the sheriff's deputies asking him about Beasley, Lucic replied, "I remember one point they asked me if he lived there and I said I didn't think so because I didn't recognize the last name. But I didn't know everybody's last name, especially if I didn't rent them the room." The state then showed Lucic his written statement from October 25, 2014, where he told the detectives that Beasley had "moved out" six months

previously. When asked why he told the deputies that, Lucic replied, "there was other people living in the place probably at the time." Lucic then stated, "[t]hat's the only thing I can figure."

{¶10} Lucic further stated that he could not recall ever seeing Beasley "in the apartment" after October 25, 2014, but he said that he does not "pay much attention to tenants around there unless they call me with a problem."

{¶11} On cross-examination, Lucic admitted that he could not verify when Watts rented Unit 17, or for how long. He also could not say for sure if Lucic ever spent the night at Watts's apartment, but he assumed that he did because he would see him sometimes late at night and early in the morning. Lucic further admitted that even though he told the sheriff's deputies that new tenants were living in Unit 17 on October 25, 2014, he was not entirely sure of that fact. Lucic admitted that the information that he gave to detectives could have been inaccurate because he had no knowledge of the time period when Watts moved out of the building, stating that he did not "keep a book" and he is "not the building manager."

{¶12} On redirect-examination, Lucic was asked, "when you spoke to the detectives on October 25, 2014, was Kenya Watts residing in Apartment 17?" Lucic replied, "I don't know. I don't think so. No. Not if I told them they weren't there." Upon further questioning, Lucic agreed that his memory "probably" would have been more accurate in October 2014 than at the time of his trial testimony in August 2015.

{¶13} At the close of the state's case, Beasley moved for a Crim.R. 29 acquittal,

which the trial court denied.

{¶14} Two witnesses testified on behalf of Beasley — James Assad and Kenya Watts. Assad testified that he owns the Walnut Inn apartments. Assad stated that Watts moved into Unit 17 in October 2013. Assad was "95 percent" sure that Watts did not move out until the end of January 2015, and that she vacated the property as of February 1, 2015. Assad said that Watts did not pay rent for the month of January 2015, but that she did pay monthly rent up until that point.

{¶15} Assad confirmed that Lucic handled some jobs for him, including accepting rent from tenants and handing out mail. Assad said that Lucic used to do more for him, but no longer could because Lucic had not been well.

{¶16} On cross-examination, Assad admitted that he is not at the apartment building very often. He agreed that Beasley was not "cohabitating" with Watts officially. He further agreed that Beasley could have moved out at some point and he would not have known.

{¶17} Watts testified that she lived at the Walnut Inn, Unit 17, from October 1, 2013, until January 29, 2015. She stated that Beasley had been her boyfriend for two years, and had lived with her at the Walnut Street apartment from "day one." Watts said that she and Beasley moved to Alder Street on January 29, 2015.

{¶18} Beasley rested, and renewed his Crim.R. 29 motion, which the trial court again denied.

{¶19} The trial court found Beasley guilty of both counts. It sentenced him to

five years of community control sanctions on both counts, to be served concurrent to each other. It is from this judgment that Beasley appeals.

## II. Sufficiency of the Evidence

{¶20} Beasley argues that the state failed to present sufficient evidence against him to prove beyond a reasonable doubt that he was guilty of R.C. 2950.05(E)(1), failure to provide notice of change of address, and R.C. 2913.42(A)(1), tampering with records.

{¶21} "'[S]ufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997), citing *Black's Law Dictionary* 1433 (6th Ed.1990). When an appellate court reviews a record upon a sufficiency challenge, "the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶22} To establish that Beasley was guilty of failure to provide notice of change of address under R.C. 2950.05(E)(1), the state was required to prove beyond a reasonable doubt that Beasley failed to provide written notice to the Cuyahoga County sheriff at least 20 days prior to moving that he was going to change his address.

{¶23} To establish that Beasley was guilty of tampering with records under R.C. 2913.42(A), the state was required to prove beyond a reasonable doubt that Beasley,

knowing he did not have privilege to do so and with purpose to defraud or knowing that he was facilitating a fraud, falsified his sex offender registration form.

{¶24} After reviewing the evidence in this case, we agree with Beasley that even when looking at the evidence in a light most favorable to the prosecution, the state failed to present sufficient evidence to prove beyond a reasonable doubt that he violated R.C. 2950.05(E)(1) or 2913.42(A). The sheriff's deputies in this case, two detectives and a sergeant, testified that they relied on Lucic holding himself out as the "property manager" and Lucic's statement that Beasley had moved out of the Walnut Inn apartments at least six months prior to October 25, 2014. The sheriff's deputies' reliance on Lucic holding himself out as the "property manager" and Lucic's statement that Beasley moved out six months before October 25, 2014, may have been enough to establish probable cause to arrest Beasley. It was not, however, sufficient to prove beyond a reasonable doubt that Beasley committed the offenses — not in light of the fact that Lucic testified at trial and essentially admitted that he had no idea when Beasley moved out of Unit 17 of the Walnut Inn apartments.

{¶25} Moreover, although Lucic did odd tasks for the owner of the building in exchange for living there rent free, Lucic admitted that he had no access to the business office, or access to any of the business or tenant records.

{¶26} Although Lucic said that he would see Beasley "in passing" almost "daily," Lucic was unsure about many material facts. Lucic could not say when Beasley lived at the apartment. Lucic was "pretty sure" that Watts lived there for over a year, but he

could not give any specific dates. Lucic could not say exactly when Watts or Beasley moved out of the apartment. Lucic admitted that even though he told the sheriff's deputies that new tenants were living in Unit 17 on October 25, 2014, he was not entirely sure of that fact. Even upon questioning of the state as to whether Lucic's "memory" would have been better when he provided a statement to the sheriff's deputies or now, Lucic stated that his "memory" probably would have been better on October 25, 2014.

{¶27} But "memory" is not the issue. It was not that Lucic did not "remember" when Beasley moved out of the apartment; it was clear that Lucic never knew when Beasley moved in with Watts, when he actually lived there, or when he moved out of the apartment. More importantly, Lucic was not the owner of the building, was not the property manager, and had no access to the tenants' records. Lucic further admitted that he did not "pay much attention to tenants" unless they called him with a problem.

{¶28} Although we disagree with Beasley that Assad's testimony "unequivocally" established any fact for Beasley (because Assad was only 95 percent sure of when Watts moved out and he admitted that he would not have known if Beasley had moved out of Watt's apartment before February 1, 2015), that is not the issue. It was not Beasley's burden to prove anything. The state had the burden to prove the essential elements of the crimes beyond a reasonable doubt.

{¶29} As the Ohio Supreme Court explained in *Thompkins*, "sufficiency is a test of adequacy." *Id.,* 78 Ohio St.3d at 386, 678 N.E.2d 541. Whether there is sufficient evidence to legally sustain a verdict is a question of law. *Id.* Here, the state's evidence

was not adequate as a matter of law. When faced with the weakness of Lucic's testimony, which the state should have known before trial, the state should have subpoenaed Assad, and requested that he bring his business records to court, which would have at least established when Watts moved out of the apartment.

{¶30} It is important to note that Lucic was not recanting his previous statement. Nor was he trying to help Beasley. This is not a case where the state's key witness turned on the state. Lucic simply had no idea when Beasley lived at the Walnut Inn apartments.

{¶31} "[A] conviction based on legally insufficient evidence constitutes a denial of due process." *Thompkins* at 386, citing *Tibbs v. Florida*, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). Essentially, Lucic's testimony, even *if believed*, did not establish anything. The sheriff's deputies relied on Lucic's statement, but it was clear from Lucic's testimony that when he gave the statement to the detectives, he was not sure who lived in Unit 17. Thus, the state failed to prove beyond a reasonable doubt that Beasley failed to provide notice of his change of address 20 days before he moved — because it did not even prove that he moved.[1] Likewise, because the state did not prove that he moved, it did not prove beyond a reasonable doubt that he falsified his sex registration form on December 9, 2014.

---

[1]And although Beasley registered his new address on Alder Street on February 5, 2015, five days after Watts said they moved there (thus, not 20 days prior to moving), the state did not charge Beasley for failing to change his address to Alder Street. It charged him for failing to provide notice that he moved six months before the sheriff's deputies went to the Walnut Inn apartments and for falsely reporting on December 9, 2014, that he still lived there.

**{¶32}** Accordingly, we sustain Beasley's first assignment of error and vacate his convictions.

**{¶33}** Based on our disposition of the first assignment of error, Beasley's second assignment of error is rendered moot.

**{¶34}** Judgment reversed and case remanded to the lower court for further proceedings consistent with this opinion.

It is ordered that appellant recover from appellee the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

MARY J. BOYLE, PRESIDING JUDGE

PATRICIA ANN BLACKMON, J., and
ANITA LASTER MAYS, J., CONCUR